IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James C. Whaley, | C/A No. 4:22-cv-4469-JFA-TER |
| Plaintiff, | |
| vs. | **ORDER** |
| Multiple Unknown Defendants, Dr. Williams, Lt. Kudron, Shift Supervisor, ACSD, Nurse Amy Reagan, Cpl. Leapord, Cpl. Brooks, Mr. Ramos, former ACSO Deputy, Bowman, Security Lt. at ACDC, Mike Hunt, Sheriff, Lt. Clamp, Lt. Hard, Nick Gallam, Captain, Deputy Burnett, Daniel Bussey, Deputy, Timothy Mealing, Deputy Craig Hallet, Deputy, Sgt. Starke, Lt. Bradley, Cpl. Gibson, Mr. Rivers, Sgt. Arthurs, Southern Health Partners, and Ms. Buggs, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff James C. Whaley ("Plaintiff"), a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. After discovery, Defendant Nurse Amy Reagan ("Reagan") moved for summary judgment (ECF No. 107), and Defendants Lt. Kudron, Cpl. Leapord, Cpl. Brooks, Mr. Ramos, Lt. Clamp, Lt. Hardy,

Deputy Burnett, Daniel Bussey, Timothy Mealing, Craig Hallet, Lt. Bradley, Cpl. Gibson, and Ms. Buggs (collectively, "ACDC Defendants") moved for summary judgment (ECF No. 112).

After receiving Plaintiff's memoranda opposing the motions (ECF Nos. 118 & 150), Defendants filed reply briefs (ECF Nos. 120 & 153). Subsequently, Plaintiff filed additional briefings in opposition to Defendants' motions, to which Defendants submitted additional reply briefs. (ECF Nos. 123, 127, & 157). After reviewing these submissions, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"). (ECF No. 168). In the Report, the Magistrate Judge opines that Defendant Reagan's Motion for Summary Judgment (ECF No. 107) should be granted and that ACDC Defendants' Motion for Summary Judgment (ECF No. 112) should be granted in part and denied in part. The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without recitation. Defendant Buggs filed objections to the Report on August 6, 2024, (ECF No. 172) to which Plaintiff filed a Reply. (ECF No. 181). Additionally, on September 9, 2024, Plaintiff filed objections to the Report (ECF No. 182), to which Defendant Reagan replied. Therefore, this matter is ripe for review.

## II.    LEGAL STANDARD

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district

court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate, this court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which

3

only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47). The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.[1]

## III. DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report. However, a brief recitation of the factual background is necessary to analyze the objections. Because Plaintiff is proceeding *pro se*, the Court is charged with liberally construing the pleadings to allow Plaintiff to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). Additionally, all facts and inferences to be drawn therefrom are

---

[1] Plaintiff objects to the standard of review presented in the Report. (ECF No. 182 ¶¶ 11 & 12). While Plaintiff's objections are somewhat unclear, it appears Plaintiff believes *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), *Shealy v. Winston*, 929 F.2d 1009 (4th Cir. 1991), and *Mitchel v. Data Gen. Corp.*, 12 F.3d 1310 (4th Cir. 1993) incorrectly outline the legal standard for reviewing a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 182 ¶ 11). Although Plaintiff does not specify issues with the Report's language, Plaintiff contends it should cite "the evolving standards of decency" and language from *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1990). (ECF No. 182 ¶ 11). While Plaintiff prefers the language in *Altizer*, the legal standard employed in a motion for summary judgment is well settled and properly outlined in the Report. Further, the "evolving standards of decency" is an Eighth Amendment doctrine that suggests society's interpretation of "cruel and unusual punishment" evolves as it "matures." *Trop v. Dulles*, 356 U.S. 86 (1958). Despite Plaintiff's objection, the doctrine has no bearing on the legal standard employed for a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure. Further, as discussed below, as a civil pretrial detainee, Plaintiff's claims are analyzed under the Fourteenth Amendment, not the Eighth Amendment.

4

viewed in the light most favorable to the Plaintiff. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).

Plaintiff is a civil pretrial detainee at the Aiken County Detention Center (ACDC) awaiting civil commitment proceedings under the Sexually Violent Predator Act (SVPA).[2] On March 3, 2023, Plaintiff filed an Amended Complaint, asserting 11 claims against twenty-one individually named Defendants for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (ECF No. 19). On August 18, 2023, this Court adopted the Magistrate Judge's recommendation and dismissed several of the named Defendants and Plaintiff's Claims 1, 2, 3, 5, 9, 10, and 11. (ECF No. 87). After discovery, the remaining Defendants filed motions for summary judgment as to Plaintiff's Claims 4, 6, 7, 8, and what has been referred to as Plaintiff's "Med-3 claim." (ECF Nos. 107 & 112).

Claims 4 and 6 concern the conditions of Plaintiff's confinement on two separate occasions. In Claim 4, Plaintiff alleges his cell toilet was inoperable for four days. (ECF No. 19, p. 10-12). Plaintiff contends three ACDC Defendants were aware of the situation but did not rectify the conditions until Plaintiff's father contacted ACDC. (ECF No. 19, p. 10-12). According to Plaintiff, the inoperative toilet caused urine and feces to flood his cell floor, resulting in severe emotional and physical distress. (ECF No. 19, p. 10-12). Similarly, Claim 6 relates to urine, feces, rotten food, and flies in C-Pod, where Plaintiff resided. (ECF No. 19, p. 12-15). Plaintiff alleges these conditions persisted from July 2022

---

[2] The SVPA allows the state to initiate involuntary civil commitment proceedings against a sexually violent offender to determine if the individual qualifies as a "sexually violent predator." S.C. Code Ann. § 44-48-20.

5

to March 2023, despite ACDC Defendants' awareness of the situation. (ECF No. 19, p. 12-15). Although the reported conditions occurred outside of Plaintiff's cell, Plaintiff contends the circumstances caused him extreme emotional and physical harm. (ECF No. 19, p. 12-15).

Plaintiff's Claim 7 is directed at ACDC Defendant Ramos. (ECF No. 19, p. 15-16). Plaintiff alleges Defendant Ramos "falsified" a "Refusal of Medical Treatment and Release of Responsibility" form on August 4, 2021. (ECF No. 19, p. 15-16). The record reflects that Defendant Ramos "had no involvement" in providing or denying medical care to Plaintiff on August 4. (Gallam Aff. ¶ 4). Instead, a nurse at Southern Health Partners completed the form, and Defendant Ramos signed as a witness, attesting that Plaintiff refused to sign. (Gallam Aff. ¶ 4).

In Claim 8, Plaintiff alleges that Defendant Reagan falsified a refusal of treatment form when Plaintiff made a sick call request for "acute pain like a stab wound" on June 7, 2022. (ECF No. 19, p. 16-17). Plaintiff further alleges Defendant Reagan refused to treat him for a herpes outbreak on his mouth and genitals. (ECF No. 19, p. 16-17). Plaintiff alleges that Defendant Reagan's failure to provide medical care caused Plaintiff emotional and physical harm. (ECF No. 19, p. 16-17).

Finally, Plaintiff's Med-3 Claim alleges a disciplinary board, led by Defendant Buggs, found Plaintiff guilty of using another inmate's online account. (ECF No. 19-4, p. 4-5). Plaintiff contends that the proceeding violated his procedural due process rights because Defendant Buggs did not provide him adequate notice of the charge. (ECF No. 19-4, p. 4-5). Plaintiff alleges his punishment included restrictions on his ability to order items

6

from the kiosk commissary, including hydrocortisone cream to treat his eczema. (ECF No. 19-4, p. 4-5).

The Magistrate Judge recommends that Defendant Reagan's Motion for Summary Judgment (ECF No. 107) be granted and that ACDC Defendants' Motion for Summary Judgment (ECF No. 112) be granted in part and denied in part. (ECF No. 168) Specifically, the Magistrate Judge recommends granting summary judgment on all claims against ACDC Defendants except for Plaintiff's Med-3 Claim against Defendant Buggs. (ECF No. 168). Plaintiff and Defendant Buggs filed objections to the Magistrate's Report. (ECF Nos. 172 & 182).

### a. Plaintiff's Objections

#### i.    Clerical Errors

As a preliminary matter, Plaintiff raises several objections to clerical errors within the Report. Plaintiff's first objection concerns including his "prison 10 number" in the Report's caption.  (ECF No. 182 ¶ 1). Plaintiff argues this number is "immaterial and impertinent" because he was "not in prison when filing." (ECF No. 182 ¶ 1). Although the objection is not entirely clear, the prison 10 number in the Report's caption appears to be associated with Plaintiff's criminal conviction preceding his civil pretrial detainment. Since Plaintiff's civil pretrial detainment is separate and distinct from Plaintiff's criminal conviction, the Court has removed the number from the caption.

Plaintiff also objects to several discrepancies in the Report's caption and opening paragraphs. (ECF No. 182 ¶¶ 2, 3, & 4).  First, Plaintiff objects to including "dismissed defendants" in the caption. (ECF No. 182 ¶ 2). Plaintiff is correct; this Court dismissed

7

Defendant Gallam by prior Order. However, it is standard practice that all parties remain in the caption for the duration of litigation. Accordingly, the Court will not amend the caption. Additionally, Plaintiff notes that the Report incorrectly refers to Defendant Tonetta Buggs as "Mr." Buggs. (ECF No. 182 ¶ 4). Although immaterial to the disposition of this action, the Court commends Plaintiff's attention to detail and has made the necessary corrections.

Plaintiff also contends that the Report's caption and introduction incorrectly omit Defendant Bradley. (ECF No. 182 ¶¶ 2 & 3). While Plaintiff is correct that the introduction excluded Defendant Bradley as a remaining ACDC Defendant, the caption includes Defendant Bradley as "Lt. Bradley." (ECF No. 168). Despite the discrepancy, Defendant Bradley remains a party to this lawsuit as a named ACDC Defendant to Plaintiff's Claim 6 and is included in this Order's introduction.

Lastly, Plaintiff objects to the Report's reference to the pending civil commitment proceedings against him pursuant to the SVPA. (ECF No. 182 ¶ 5). Plaintiff argues his civil pretrial detainment status is "immaterial and impertinent." (ECF No. 182 ¶ 5). Further, Plaintiff states that referencing the SVPA deprives him of "procedural protection." (ECF No. 182 ¶ 5).

The Court rejects Plaintiff's arguments. First, no evidence suggests Plaintiff's procedural due process rights were compromised by the Report's reference to his pending civil commitment proceedings. Further, as explained below, Plaintiff's civil pretrial detainment implicates the burden Plaintiff carries in asserting his claims against

8

Defendants. Accordingly, Plaintiff's civil pretrial detainee status is both material and pertinent.

### ii.     Objections to the Statement of Facts

Plaintiff asserts several objections relating to the statement of facts outlined in the Report. First, Plaintiff argues that the "limited facts" set forth for Claim 4 are insufficient. (ECF No. 182 ¶ 6).[3]  Specifically, Plaintiff contends the Report excluded allegations of "punitive conditions of confinement" relating to limitations on recreation, e.g., limited out-of-cell time, revocation of visitation, and revocation of television privileges. (ECF No. 182 ¶ 6). Plaintiff is correct; the Report does not address his allegations regarding ACDC restrictions on visitation and recreation between 12/02/22 and 12/06/22. (ECF No. 168). However, this Court adopted the Magistrate Judge's recommendation to dismiss a substantially similar claim asserted by Plaintiff for failure to identify a perpetrator of the alleged deprivations. (ECF Nos. 52 & 83). Accordingly, Plaintiff's objection is without merit and overruled.

Similarly, Plaintiff objects to the Report's statement of facts relating to Claims 6, 7, and Med-3. Plaintiff does not identify specific flaws in the Report's statement of facts, but rather, repeatedly states he "availed" himself in his Response to Defendants' summary

---

[3] Plaintiff also contends the Report's facts section is erroneous because of the Magistrate Judge's application of *Sandin v. Conner*, 515 U.S. 472 (1995) in a prior Report and Recommendation. (ECF No. 52). This Court previously adopted the prior Report (ECF No. 52), and accordingly, overrules Plaintiff's objection here.

judgment motion. (ECF No. 182 ¶¶ 7-9). The Court will not address Plaintiff's arguments without specific objections to the Report.

Finally, Plaintiff objects to the Report's statement of facts for Claim 8. Specifically, Plaintiff rejects reference to Defendant Reagan's Affidavit. (ECF No. 107). Plaintiff argues Defendant Reagan is a "perjured liar" and that he never refused medical treatment. (ECF No. 182 ¶ 10). Plaintiff's objection only reasserts evidence contained in his Declaration (ECF No. 123-1), which the Magistrate Judge addressed in the Report. (ECF No. 168, p. 18). Accordingly, the Report properly recounted Defendant Reagan's Affidavit and Plaintiff's Declaration.

### iii.    Conditions of Confinement Claims

The Report recommends granting ACDC Defendants' Motion for Summary Judgment as to Plaintiff's claims regarding the conditions of his confinement -- namely, the fact that excrement engulfed his cell and cell block on two separate occasions. (ECF No. 168). The Magistrate Judge concluded that Plaintiff failed to prove that: (1) Plaintiff's conditions of confinement posed a substantial risk of serious harm; (2) ACDC Defendants' conduct created an unjustifiably high risk of harm; and (3) Plaintiff suffered an injury or risk of injury resulting from ACDC Defendants' conduct. (ECF No. 168, p. 12).

In response, Plaintiff states the Report erroneously applied *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023) and that he presented sufficient evidence to overcome ACDC Defendant's summary judgment motion. (ECF No 182 ¶¶ 13-21).  As outlined in the Report, until recently, the standard of review for conditions of confinement claims by pretrial detainees under the Fourteenth Amendment was substantially the same as claims

for convicted prisoners under the Eighth Amendment. *See Short*, 87 F.4th at 607 (4th Cir. 2023) (discussing the Eighth Amendment's subjective standard analysis as applied to Fourteenth Amendment claims asserted by pretrial detainees). However, the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), prompted the Fourth Circuit to change course.

In *Kingsley*, the Supreme Court held that pretrial detainees alleging Fourteenth Amendment Due Process violations for excessive use of force need only demonstrate that an officer employed objectively unreasonable force. *Kingsely*, 576 U.S. at 389 (2015). Following this decision, the Fourth Circuit extended *Kingsley's* holding to deliberate indifference claims alleged by pretrial detainees. *Short*, 87 F.4th at 609 (stating *Kingsley* "directs [courts] to be more solicitous of the Fourteenth Amendment claims of a pretrial detainee than the Eighth Amendment claims of a post-conviction detainee"). Accordingly, under *Short*, a pretrial detainee only needs to show that the defendant's conduct was "objectively unreasonable." *Id.* at 611 (quoting *Kingsley*, 576 U.S. at 397).

Reviewing the record in the light most favorable to Plaintiff, the Magistrate Judge concluded that ACDC Defendants are entitled to summary judgment on Plaintiff's claims 4 and 6. Citing *Short*, the Magistrate Judge provided that to succeed on a condition of confinement claim, a civil pretrial detainee must show: (1) that he was subjected to a condition of confinement that posed a substantial risk of serious harm; (2) that "the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed;" (3) that the defendant "knew or should have known" that the "defendant's action or inaction posed an unjustifiably high risk of harm;

and (4) as a result, the detainee was harmed." *Id.* at 612; *see also Darnell v. Pineiro*, 849 F.3d 17, 35 (2nd Cir. 2017) (adopting a similar test for claims of deliberate indifference to conditions of confinement under the due process clause of the Fourteenth Amendment).

First, Plaintiff objects that the Magistrate Judge improperly applied *Short* and that the "professional judgment standard" outlined in *Youngberg v. Romeo*, 457 U.S. 307 (1982) governs his claims. (ECF No. 182 ¶¶ 13, 14, 15, 17, & 18). In *Youngberg*, the Supreme Court recognized that intellectually disabled civil detainees retain a liberty interest in "safety and freedom from bodily restraint." *Youngberg*, 457 U.S. at 320 (1982). However, "those interests are not absolute." *Id.* Accordingly, *Youngberg* held that an intellectually disabled civil detainee[4] asserting 42 U.S.C. § 1983 claims against state actors must prove that the state actor's conduct "substantial[ly] depart[ed] from accepted professional judgment."

Plaintiff argues that the professional judgment standard should apply to his case because he faces involuntarily civil commitment pursuant to the SVPA. The SVPA allows the state to initiate involuntary civil commitment proceedings against a sexually violent offender to determine if the individual qualifies as a "sexually violent predator." S.C. Code Ann. § 44-48-20. After an extensive review of an offender's history, if the state finds

---

[4] The Fourth Circuit has extended the application of *Youngberg* beyond individuals involuntarily committed due to intellectual disabilities. *Doe 4 by & through Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*, 985 F.3d 327, 339 (4th Cir. 2021) (applying *Youngberg* to § 1983 claims asserted by unaccompanied alien children civilly committed to a state facility); *Matherly v. Andrews*, 859 F.3d 264, 274-75 (4th Cir. 2017) (applying *Youngberg* to a § 1983 claim asserted by an individual "involuntarily committed to a prison for a program designed to treat his dangerousness as a sexual offender"). However, Plaintiff's case is distinct from those Fourth Circuit rulings because his involuntary commitment status is pending adjudication.

probable cause that an individual is a sexually violent predator, that individual is entitled to a bench or jury trial where he or she must be convicted beyond a reasonable doubt. S.C. Code Ann. § 44-48-70-100.

Plaintiff is currently civilly detained pending state review and trial to determine his status as a sexually violent predator. However, although Plaintiff faces involuntary commitment, his § 1983 claims pertain to his detainment at ACDC as a pretrial detainee. Therefore, the standards articulated in *Short* govern and Plaintiff's objection is overruled.[5]

Turning to the merits of the Report, the Magistrate Judge concluded Plaintiff's Claims 4 & 6 fail because Plaintiff did not demonstrate that his conditions of confinement posed a substantial risk of serious harm. In response, Plaintiff contends ACDC Defendants placed him in C-Pod to punish him. (ECF No. 182 ¶ 13). Further, Plaintiff argues his confinement conditions are distinct from other cases where courts upheld unsanitary conditions as constitutional. (ECF No. 182 ¶ 18).

"Deprivation of basic sanitary conditions such as exposure to human waste without the ability to clean oneself can constitute an Eighth Amendment violation." [6] *Jones v. Solomon*, No. 1:18-CV-89-FDW, 2018 WL 6247265, at *11 (W.D.N.C. Nov. 29, 2018)

---

[5] In several objections, Plaintiff references the "least restrictive means test" and the "compelling or substantial test" proffered by the Third Circuit in *Romeo v. Youngberg*, 644 F.2d 147, 161, 164 (3rd Cir. 1980). (ECF No. 182 ¶¶ 13, 14, 18). However, as discussed above, *Youngberg* does not apply to Plaintiff's claims. Further, the Supreme Court rejected the Third Circuit standard, stating that the "compelling" and "substantial" necessity tests placed an "undue burden" on institutions exercising professional judgment when caring for detainees. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982).

[6] Plaintiff is a civil pre-trial detainee protected under the Fourteenth Amendment. Notwithstanding, the objective portions of an Eighth Amendment analysis are instructive in this case.

(holding that the plaintiff alleged a viable Eighth Amendment claim when he was forced to search through his excrement for contraband without personal protection equipment or hygiene materials). Generally, unsanitary conditions claims involve "prison officials acting deliberately in creating the unsanitary conditions, the conditions lasting for an extended and unreasonably amount of time, or both." *Whitmore v. W. Reg'l Jail*, No. 3:18-CV-01483, 2019 WL 3756396, at *8 (S.D. W. Va. July 19, 2019), report and recommendation adopted, 2019 WL 3759806 (S.D. W. Va. Aug. 7, 2019). However, "the mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment." *Salmons v. W. Reg'l Jail Auth.*, No. CV 3:18-1447, 2019 WL 5616916, at *6 (S.D. W. Va. Oct. 30, 2019).

For example, in *Harris v. FNU Connolly*, 45 days of alleged exposure to urine, feces, and vomit in the plaintiff's cell did not give rise to the level of a constitutional violation. *Harris v. FNU Connolly*, No. 5:14-cv-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), aff'd, 667 F. App'x 408 (4th Cir. 2016) ("[s]hort-term sanitation problems, while unpleasant, do not amount to constitutional violations."); *see also Bailey v. Rife*, No. 1:21-cv-00424, 2021 WL 6496561, at *6 (S.D.W. Va. Nov. 19, 2021), report and recommendation adopted, 2022 WL 130746 (S.D.W. Va. Jan. 13, 2022) (one-month placement in a "hard cell" containing human waste failed to state a plausible constitutional claim). Similarly, in *Canterbury v. Western Regional*, allegations of an unrelenting and constant odor of feces and urine in the plaintiff's cell block did not constitute a constitutional violation. *Canterbury v. W. Reg'l Jail Auth.*, No. 3:18-CV-01440, 2019 WL 6545328, at *12 (S. D. W. Va. Nov. 7, 2019), report and recommendation adopted, No. CV

14

3:18-1440, 2019 WL 6598349 (S.D. W. Va. Dec. 4, 2019) (finding no violation where the plaintiff did not come into direct physical contact with human waste for an extended period).

The Court is unpersuaded by Plaintiff's objections and grants summary judgment on Claims 4 and 6. First, there is no evidence suggesting that ACDC Defendants deliberately caused Plaintiff's alleged unsanitary conditions or selected Plaintiff's housing pods as a punitive measure. (ECF No. 182 § 13). Instead, the record indicates ACDC Defendants selected Plaintiff's housing as a protective measure. (Gallam Aff. ¶ 9). In his Affidavit, Gallam explains "Plaintiff was often housed in C Pod because as a civil [pretrial] detainee he is in protective custody and cannot be housed with other detainees." (Gallam Aff. ¶ 9). Therefore, although Plaintiff believes ACDC Defendants punished Plaintiff and should have placed him minimum security, the record indicates ACDC Defendants selected Plaintiff's housing for his protection.

Regarding Plaintiff's argument that his case is distinct from others where conditions of confinement were deemed constitutional, his four-day confinement in the D-Max cell was likely uncomfortable. Plaintiff's inoperable cell toilet caused urine and feces to leak onto the floor, requiring frequent flushing to mitigate flooding. However, uncomfortable conditions alone do not raise of a substantial risk of serious harm that would constitute a Fourteenth Amendment violation. Notably, Plaintiff stayed in D-Max for four days, a significantly shorter period than cases like *Harris* and *Bailey*, where similar conditions were found constitutional.

Plaintiff's Claim 6 is also insufficient. Unlike Claim 4, Plaintiff's Amended Complaint does not indicate Plaintiff came into direct contact with feces or urine while housed in C-Pod. Plaintiff alleges that from July 2022 to March 2023, the smell of urine and feces emanated through C-Pod, and rotten food piles and flies accumulated in adjacent cells. While these conditions were less than ideal, the mere presence or smell of waste, without more, is insufficient to establish a constitutional violation for deliberate indifference to conditions of confinement. Therefore, even when construing the evidence in the light most favorable to Plaintiff, he has failed to demonstrate that his conditions of confinement posed a substantial risk of serious harm to him.

Plaintiff also objects to the Report's conclusion that "[p]laintiff has [] failed to show that Defendants' inaction or delay in cleaning the cells posed an unjustifiably high risk of harm." (ECF No. 168, p. 12). Plaintiff argues a genuine dispute of material fact exists regarding whether ACDC Defendants promptly addressed unsanitary conditions. (ECF No. 182 ¶ 15). Specifically, Plaintiff argues the Report erroneously relied on Nicholas Gallam's Affidavit because it describes what should have occurred, not what actually took place. (ECF No. 182 ¶ 15).

In his affidavit, Gallam states that "steps are generally taken within a reasonable time to clean up the cells or areas outside the cells" when detainees "act out and throw or smear feces." (Gallam Aff. ¶ 10). However, Gallam admits that ACDC Defendants cannot verify prompt cleaning occurred on the dates relevant to Plaintiff's Claim 6. Plaintiff rebuts Gallam's Affidavit in an unsworn declaration, and claims that ACDC Defendants ignored inmates defecating in C-Pod on multiple occasions. (ECF No. 150-1 ¶ 2). Plaintiff is correct

16

that the record contains conflicting evidence regarding ACDC Defendants' prompt response to unsanitary conditions. Nonetheless, as discussed above, even accepting Plaintiff's allegations as true, the conditions of his confinement did not pose a substantial risk of serious harm amounting to a Fourteenth Amendment violation. Therefore, the Court overrules Plaintiff's objection as moot.

Finally, Plaintiff objects to the Report's conclusion that Plaintiff's conditions of confinement claims fail because Plaintiff did not "present sufficient evidence to show that he was, in fact, harmed as a result of the unsanitary conditions." (ECF No. 168). Plaintiff argues that the Magistrate Judge failed to consider his claims under Federal Rule of Civil Procedure 56(d). (ECF No. 182 ¶ 16 & 20).[7] Plaintiff reiterates previous allegations of suicidal thoughts and that "a nurse told him" his cell conditions created a risk of injury. However, his objections merely repeat previous allegations and lack supporting medical evidence. Plaintiff attributes his lack of supporting medical evidence on his limited research ability. However, Plaintiff has had ample opportunity to acquire copies of medical records and other evidence to support his alleged injuries. (ECF No. 4, p. 9-21). Accordingly, Plaintiff's attempted appeal to Rule 56(d) is inappropriate here. Thus, the Court overrules this objection.

---

[7] Plaintiff also argues his inability to produce supporting medical evidence is due, in part, to the denial of Plaintiff's Motion to Appoint Counsel. (ECF No. 182 ¶ 20). Beginning with *Marbury v. Madison*, 5 U.S. 137 (1803), Plaintiff writes a lengthy analysis concerning his previously adjudicated Motion to Appoint Counsel (ECF No. 25). (ECF No. 182 ¶ 20). The Report relates to Defendants' summary judgment motions, not Plaintiff's Motion to Appoint Counsel. Accordingly, Plaintiff's objection is meritless and overruled.

Alternatively, Plaintiff argues he does not need to produce evidence of an injury or risk of injury to survive summary judgment because nominal damages are available in § 1983 cases. (ECF No. 182 ¶ 20). To the contrary, an award of nominal damages is only appropriate when the plaintiff "established the violation of a constitutional right but cannot prove actual injury." *Dawkins v. Huffman*, No. 01–7174, 2001 WL 1613764, at *1 (4th Cir. Dec. 18, 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)). As discussed above, Plaintiff has not established that his conditions of confinement violated his constitutional rights. Therefore, Plaintiff is not entitled to nominal damages.

### iv.  Deliberate Indifference to Serious Medical Need Claim

The Report recommends granting summary judgment as to Plaintiff's Claim 7 against Defendant Ramos. The elements of a medical indifference claim for civil pretrial detainees are substantially the same as those of a conditions of confinement claim:

> (1) the[] [plaintiff] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611.[8] The Magistrate Judge concluded Plaintiff's claim failed because he did not provide facts indicating what type of care he needed and did not prove that he suffered medical harm resulting from the alleged denial of medical care.

---

[8] Plaintiff raises another objection to the Report's application of *Short*. (ECF No. 182 ¶ 22). For the same reasons discussed above, the Magistrate Judge properly outlined the elements of a deliberate indifference to medical need claim relating to civil pretrial detainees.

In response, for the first time, Plaintiff argues Defendant Ramos deprived him of his right to a health appraisal under § 2056 of the Minimum Standards[9] for Local Detention Facilities in South Carolina (Minimum Standards). (ECF No. 182 ¶ 23). Minimum Standards § 2056 requires South Carolina detention centers to conduct health appraisals within 14 days of admitting a new detainee. Minimum Standards for Local Detention Facilities in South Carolina, § 2056 (2013). Although it is not entirely clear, it appears Plaintiff mistakenly believes Minimum Standards § 2056 entitles him to unlimited health appraisals at ACDC.

Nonetheless, ACDC Defendants do not dispute Plaintiff's right to necessary health appraisals. Rather, ACDC Defendants contend that Defendant Ramos did not falsify the "Refusal of Medical Treatment and Release of Responsibility" form. (Gallam Aff. ¶ 4). The record reflects that a nurse employed by Southern Health Partners prepared the form and that Defendant Ramos only signed as an attesting witness to Plaintiff's refusal of medical treatment. (Gallam Aff. ¶ 4). Plaintiff objects to the record's veracity, stating the Report erroneously relied on Gallam's Affidavit because it contains "unlawfully obtained medical records"[10] and is not based on personal knowledge. (ECF No. 182 ¶ 25).

---

[9] Plaintiff also objects that the Report failed to address his contention that the Minimum Standards have the "force and effect of law" and that non-compliance with the Minimum Standards is a per se violation of the professional judgment standard. (ECF No. 182 ¶¶ 17 & 21(ii)). First, as discussed above, irrespective of the Minimum Standards, the professional judgment standard does not apply to Plaintiff's case. Second, the state guidelines may inform an analysis of the objective reasonableness of ACDC Defendants' conduct, however, whether they have "the force and effect of [state] law" has no bearing on whether Plaintiff's federal constitutional rights were violated. Accordingly, the Court overrules Plaintiff's objection.

[10] Plaintiff does not allege that Gallam used his medical records for any purpose other than addressing his medical indifference claims. Accordingly, the Court overrules Plaintiff's objection

Additionally, Plaintiff produced copies of prior medical refusal forms signed by Plaintiff as evidence that Defendant Ramos's testimony conflicts with Plaintiff's medical history. (ECF No. 185).

However, the Court need not address the strength of Gallam's Affidavit because Plaintiff has not provided evidence that he did, in fact, suffer harm resulting from the alleged deprivation. Notably, Plaintiff admits he was unaware of the care Defendant Ramos allegedly denied him for over a year and that he only discovered the alleged denial when he examined his medical records. (ECF No. 19, p. 5-6). Therefore, regardless of Gallam's Affidavit, Plaintiff has not established the essential elements of Claim 7, and his objection is overruled.[11]

The Magistrate Judge also recommends the Court grant Defendant Reagan's summary judgment motion as to Claim 8 because Plaintiff "failed to show that he was harmed by not seeing a doctor on June 7, 2022." Claim 8 concerns a sick call request for "acute pain like a stab wound" that allegedly resulted in Defendant Reagan falsifying Plaintiff's refusal of treatment form. Plaintiff further alleges that he was not seen or treated for a herpes outbreak. Plaintiff alleges that these failures to treat him were directly harmful

---

that the Magistrate Judge failed to strike Gallam's Affidavit to the extent that it relied on his medical records. The Court will, however, seal Plaintiff's medical records.

[11] For the first time, Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1985(2) and 42 U.S.C. § 1986. (ECF No. 185). § 1985(2) creates a private cause of action against co-conspirators aiming to deter a witness from attending court or testifying. 42 U.S.C. § 1985(2). Relatedly, § 1986 creates a private cause of action against a third party failing to thwart the conspiracy. Although it is not entirely clear, Plaintiff appears to believe ACDC Defendants conspired to forge his medical refusal treatment form. Plaintiff does not offer evidence to support this theory. Additionally, § 1985(2) and § 1986 are not applicable to Plaintiff's claim. Therefore, Plaintiff's objection is overruled.

to him mentally, emotionally, and physically and left him with severe pain in his stomach as well as herpes on his penis and mouth. (ECF No. 19, p. 16).

First, Plaintiff objects to the Report's application of *Short*, however, as discussed above, the Magistrate Judge properly applied *Short* to Plaintiff's claims. (ECF No. 182 ¶ 28). Second, Plaintiff objects to "the applications of *Hall* and *Lewallen*." (ECF No. 182 ¶ 29). However, Plaintiff's objection is non-specific, as he does not identify why *Hall* and *Lewallen* are inapplicable.

Plaintiff's final objection is substantially similar to his objections to Claim 7. Plaintiff opposes summary judgment, contending there is a genuine issue of material fact as to whether Defendant Reagan forged Plaintiff's medical refusal form. Plaintiff claims Defendant Reagan lied in her affidavit and that the Magistrate Judge improperly relied on it in the Report's analysis. (ECF No. 185). Additionally, Plaintiff produced copies of prior medical refusal forms signed by Plaintiff as evidence that Defendant Reagan's testimony conflicts with Plaintiff's medical history. (ECF No. 185).

Nonetheless, much like Claim 7, absent verifying medical evidence, Plaintiff's broad allegations of mental, emotional, and physical pain do not satisfy the elements of a medical indifference claim. Accordingly, even if an issue of fact exists as to whether Plaintiff refused treatment, Plaintiff's claim fails. Therefore, the Court overrules Plaintiff's objections regarding the Report's recommendation on Claim 8 and grants Defendant Reagan's summary judgment motion.

### b. Defendant Bugg's Objections

Plaintiff's Med-3 Claim is asserted solely against Defendant Buggs, who allegedly presided over a disciplinary hearing where Plaintiff was found guilty of logging into another inmate's online account. (ECF No. 19-4, p. 4-5). As a result, Plaintiff allegedly lost privileges to purchase medications through the kiosk, namely hydrocortisone cream used to treat his eczema. (ECF No. 19-4, p. 4-5). ACDC Defendants did not address Plaintiff's Med-3 Claim in their Motion for Summary Judgment but addressed it in their Reply after Plaintiff raised it in his Response. (ECF No. 153).

The Magistrate Judge recommends denying ACDC Defendant's summary judgment motion as to Plaintiff's Med-3 Claim. (ECF No. 168, p. 16). Defendant Buggs submitted objections to the Report, and Plaintiff submitted a Reply. (ECF Nos. 172 & 181).

As a preliminary matter, Defendant Buggs objects to whether Plaintiff's Med-3 claim remained viable following the Order issued by this Court on August 16, 2023. (ECF No. 172). Defendant Buggs is correct that the August 16 Order omitted Plaintiff's Med-3 claim. (ECF No. 87). However, the omission did not affect the viability of Plaintiff's claim or Defendant's burden in proving she is entitled to summary judgment. Defendant Buggs received notice of Plaintiff's Med-3 Claim when the Court granted Plaintiff's Motion to Amend to add Defendant Buggs and ECF No. 46 as part of the Amended Complaint. Accordingly, Defendant Buggs had notice of Plaintiff's Med-3 Claim and could have addressed it in her initial summary judgment motion. Moreover, Defendant Buggs did address the Med-3 Claim in her Reply and had an opportunity to present her strongest arguments in favor of dismissal. Thus, the Med-3 Claim is properly before the Court and remains viable.

Defendant Buggs also asserts Plaintiff failed to allege a valid procedural due process claim backed by sufficient evidence to overcome summary judgment. Because pretrial detainees have not been convicted of the crimes they are charged with, "they retain a liberty interest in freedom from 'punishment,' even while they are detained, to ensure their presence at trial." *Dilworth v. Adams*, 841 F.3d 246, 251 (4th. Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979)). "Though '[l]oss of freedom of choice and privacy are inherent incidents' of pretrial detention, discrete 'punitive measures' imposed during pretrial detention intrude on a protected liberty interest." *Dilworth* 841 F.3d at 251 (citing *Bell*, 441 U.S. 537 (1979)); *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005) ("Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment[.]"); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (finding pretrial detainees are protected with respect to "any form of 'punishment'").

The Supreme Court established the elements of due process in prison disciplinary proceedings in *Wolf v. McDonnell*, 418 U.S. 539 (1974). Striking a balance between an inmate's "due process interests" and a penal institution's "legitimate goals and security concerns," the *Wolff* Court held that an inmate is entitled to "call witnesses and present documentary evidence" during prison disciplinary proceedings, "unless doing so would present an undue hazard." *Dilworth*, 841 F.3d at 253 (citing *Wolff*, 418 U.S. at 557-58). Further, an inmate is entitled to written notice of the alleged violation 24 hours before a disciplinary hearing on the matter. *Id.* (citing *Wolff*, 418 U.S. at 563-65).

As stated above, Plaintiff is a civil pretrial detainee awaiting civil commitment proceedings under the SVPA. Accordingly, Plaintiff retains a liberty interest in freedom

from punishment while his civil commitment proceedings are pending. Further, Plaintiff was entitled to necessary procedural safeguards such as written notice of his infraction 24 hours prior to the disciplinary hearing.

Defendant Buggs argues this Court should dismiss Plaintiff's Med-3 Claim because Plaintiff failed to provide "any evidence, such as a copy of that disciplinary charge or the adjudication of that charge by Defendant Buggs." In essence, Defendant Buggs argues Plaintiff failed to show the alleged disciplinary hearing occurred. However, attached to Plaintiff's Response to ACDC Defendants' summary judgment motion, Plaintiff submitted an unsworn declaration under penalty of perjury, realleging that he received notice of the charge less than two hours before the hearing, that he was only given five to six minutes notice of the hearing before it occurred, and that ACDC revoked his access to medical products as a result of the infraction. Thus, viewing the facts and inferences in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether his procedural due process rights were violated as alleged in the Med-3 Claim.

Finally, Defendant Buggs contests the Report's conclusion that she failed to assert a quasi-judicial immunity defense. Judges and prosecutors performing official duties related to the judicial phase of the criminal process are immune from civil actions for damages. *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999). The Supreme Court and the Fourth Circuit have extended this liability shield to "'quasi-judicial' agency officials," *id.* (citing *Butz v. Economou*, 438 U.S. 478, 508 (1978)), including officials in state as well as federal agencies. *Butz*, 438 U.S. at 496–500. This quasi-judicial immunity is extended when: (1) the nature of the official's functions is similar to those of a judge; (2) a strong

need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) adequate procedural safeguards exist to protect against constitutional deprivations. *Ostrzenski*, 177 F.3d at 249.

The Magistrate Judge rejected Defendant Bugg's quasi-judicial immunity defense because "Defendants [did] not address[] the[] requirements for quasi-judicial immunity." (ECF No. 168). In response, Defendant Buggs attempts to revise her quasi-judicial immunity defense. (ECF No. 172). Defendant Buggs cites Fourth Circuit case law that points to a strong need for prison officials to perform official functions without fear of harassment or intimidation. (ECF No. 172, p. 4-5) (citing *Ward v. Johnson*, 690 F.2d 1098, 1108 (4th Cir. 1982)). However, Defendant Buggs does not discuss her role as a disciplinary hearings officer and how it relates to the role of a judge. Further, Defendant Buggs does not address whether Plaintiff's hearing contained adequate procedural safeguards to protect against constitutional violations.

Defendant Buggs states "[a]s a disciplinary hearing officer, Buggs' functions are similar to those of a judge, and the cases cited recognize that a prison disciplinary hearing officer is entitled to quasi-judicial immunity for monetary liability" (ECF No. 172, p. 4). The Court acknowledges that public policy favors immunity for prison disciplinary hearing officers. *Ward*, 690 F.2d at 1108 (discussing the burden frivolous lawsuits relating to prison disciplinary hearings pose on courts and prison officials). However, not every prison disciplinary hearing officer is entitled to immunity for every disciplinary hearing. *Id.*

25

(stating the Court may have reached a different conclusion if "the plaintiff had been denied absolutely any 'adversary' hearing, or if he had been denied any notice of the charge against him, or if he had been denied the right to confront and cross-examine his accusers at the disciplinary hearing"). Accordingly, before the Court grants a defendant quasi-judicial immunity, there must be evidence that the hearing contained "normal characteristics or attributes of a judicial proceeding with 'many of the same safeguards . . . available in the judicial process.'" *Id.* at 1105 (citing *Butz*, 438 U.S. at 513).

Plaintiff's Amended Complaint and Declaration alleges he was deprived of safeguards, such as notice of his infraction and an opportunity to examine witnesses. Accordingly, the Court cannot simply take Defendant Buggs at her word and accept her quasi-judicial immunity defense. Defendant Buggs claims her role is similar to that of a judge. Yet, she has not described her position so that the Court may assess the veracity of her defense. Moreover, Defendant Buggs does not rebut Plaintiff's allegations with evidence that his hearing proceeded with sufficient constitutional safeguards. Accordingly, without more, the court cannot grant Defendant Bugg's quasi-judicial immunity defense.

Therefore, Defendant Bugg's objections are overruled, and her motion for summary judgment is denied without prejudice.[12]

## IV. CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law in most respects. Accordingly, the Court adopts the Report in all regards except for the clerical errors addressed above. Thus, Defendant Reagan's Motion for Summary Judgment (ECF No. 107) is granted and ACDC Defendants' Motion for Summary Judgment is granted in part and denied in part. (ECF No. 112). Accordingly, Plaintiff's Med-3 Claim is ripe for trial, and a Scheduling Order will be published forthwith.

IT IS SO ORDERED.

September 30, 2024
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[12] It appears Defendant Buggs misunderstands her burden in proving she is entitled to quasi-judicial immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982) ("The burden of justifying absolute immunity rests on the officer asserting the claim."). However, Defendant Buggs may refile her motion to properly address the defense.